Morning Your Honors. Good morning. I'm Maureen Rosette, attorney for Stacey Case, the appellant in this matter. In this situation, Your Honor, we have, it's a little bit different argument than the prior case. Right, we don't have quite the technicality. More of the evidence, I guess. Yeah, so what I say the evidence in this case shows is that this case is treated, this is involving fibromyalgia again. She has a treating rheumatologist who's treated her from October of 05 through and past the date of these decisions, and he's making an opinion in just three weeks prior to the first hearing on this matter regarding Ms. Case's residual functional capacity. And then at the first hearing, Dr. Tumajon testifies that she can do basically light work, but Dr. Tumajon, if you note in the record, did not have, or if you note in the transcript, Your Honors, that he did not have all the records. He had 194 pages, and we had sent him approximately 320 pages after that that he never received. That's the reason the ALJ continued that first hearing, because Dr. Tumajon didn't have all the records. At the second hearing in April of 2008, Dr. George Rodkey testified, because Dr. Tumajon was not available, and Dr. Rodkey did have all the records up to date. And he, in his testimony, he says he agrees. He felt that Dr. Butler was in the best, Ms. Case's treating rheumatologist, was in the best position to determine what Ms. Case's residual functional capacity was. And he agreed with Dr. Butler. Dr. Butler limited Ms. Case basically to less than sedentary, and the vocational expert at the time testified that Ms. Case was not able to work with those limitations. The judge asked the vocational expert to consider a hypothetical with the limitations that Dr. Butler, her treating rheumatologist, gave. And again, the vocational expert testified she can't work. This circuit has held that not only as a treating doctor, he treated her for almost three years by the time of the first hearing, Your Honors, and also he was a specialist in the area for which he was making an opinion, which was a rheumatology on the issue of fibromyalgia, that they should be given, as far as weight of the evidence, a treating doctor in the specialization where they're making an opinion should be at the top of your list as far as giving weight to their opinions. And then in the decision, the administrative law judge indicates that he had given great weight to the opinions of Dr. Tumajon and Dr. Rodkey. Well, Dr. Tumajon didn't have all the records before him and Dr. the ALJ used his limitations in the hypothetical in determining that Ms. Case was able to do light work. That's wrong because Dr. Tumajon, number one, didn't treat or examine her. Number two, he didn't have all the records to review when he was at the hearing. That's why the whole hearing was continued until April of 08. Dr. Rodkey, when he did have all the records, agreed with Dr. Butler and said that, yeah, I agree. And it's in a transcript at page 896. He says that, he says that, actually it's 895. In summary, I'd like to say this. I think the person who knows her best, knows her condition best, is Dr. Butler and he has an RFC of at least abilities on 3F and basically he puts her at sedentary. And then he says, I believe that the best opinion that anyone could give her is that Dr. Butler has given. And that when that opinion, when that RFC was given to the vocational expert, the vocational expert testified that Ms. Case couldn't work. One of the questions I have is that you well stated the argument or the rule, of course, on the treating physician and deference, but then there's the countervailing rule that if you give a specific reason in here, the credibility of your client, which I don't think that adverse credibility finding is challenged on appeal, but the complaints or self-reporting was part of the basis for the doctor's opinion and that's precisely kind of part of the equation that's been pulled out. So why isn't that sufficient for the ALJ to make the determination as to what weight to give Dr. Butler? Well, number one, Dr. Butler as a treating physician gets to know her and he, and you look at all, I've read through all of his records a number of times, Your Honors, there's nothing in there to indicate that, well, there's nothing to indicate that the diagnosis of fibromyalgia is not credible because every doctor, even the doctors who testified as medical experts all agreed that the diagnosis of fibromyalgia was a valid diagnosis. On fibromyalgia, a lot of it is subjective. However, Dr. Butler never did once say in any of his records that he felt her pain complaints were not credible or that there was anything to say that her complaints were out of, were not consistent with what she was complaining about. So it's not, the judge made a credibility finding, yes, but none of the doctors, her treating doctors, anybody that's treated her for several years, none of them ever brought up about anything about her credibility or saying that she was drug-seeking or anything like that. There's nothing there in there. There was one psychological evaluation in there that brought up the issue of malingering, which the judge seemed to glom onto, but there's nothing from her treating sources or anybody in the would reserve a couple of minutes. I think I've made my argument. Thank you. Thank you, Your Honors. Can I ask one question? Yes. I understand your argument on her credibility, but if there was a negative determination and that was not appealed, then don't we have to accept the ALJ view on that? Well, if you do accept the fact that the ALJ in his decision found that Dr. Tumajon and Dr. Rodkey's opinions were given great weight, and both Dr. Rodkey actually did address the credibility in his testimony, but they also said they were given great weight. And Dr. Rodkey says, despite any credibility issues, the person that's best, in the best position to know what Ms. Case's residual function capacity is, is Dr. Butler, her treating rheumatologist. And that's what the said when he made that ruling, was that he gave great weight to those two doctors. If you accept that as well, then Ms. Case should win this case, because Ms. Case should win this matter, because he also found that those two doctors' opinions should be given great weight. And Dr. Rodkey agreed with Dr. Butler, who found, who in the end, the ALJ determined, or the V.E. said she couldn't work with Dr. Butler's residual functional capacity assessment. Thank you. All right, we'll hear from Commissioner Struz's attorney. Good morning, Lisa Wolf on behalf of the Commissioner. In this matter, substantial evidence supports the ALJ's consideration of the opinion from the treating physician, Dr. Butler. Dr. Butler, in January of 2008, and that's in the record at 705 to 708. It's a check-the-box form, which are not entirely favored under our case law and regulations. Here, this is a difficult case. There are sympathetic facts. This is a young woman. As her treating surgeon noted, she seemed quite healthy, but presented a complex group of medical conditions. And that was at 266 in the record. So we ask the ALJs, as the trier of fact in these cases, to look at the record and to examine the medical evidence. In this case, the ALJ held two hearings, and in each hearing, he had a medical expert. The first hearing, the medical expert, as his counsel indicated, didn't have the entire record, so he continued the hearing. There was a supplemental hearing a few months later, which in Social Security time is quite fast, and he had another M.E. there. In his M.E. was Dr. Rodkey at that hearing. So when there's conflicting medical evidence, the ALJ, we task them with determining credibility and resolving conflicts, and that's in so many cases that Thomas comes to mind. And the one way that an ALJ can give a specific and legitimate reason is by summarizing conflicting evidence in detail, which he did here. This is not a case where the ALJ neglected portions of the opinion. We have a pretty comprehensive decision here. I would agree with that, but maybe I could focus you on what the ALJ said, both of which seem to be wrong as a matter of law, and that is, although Dr. Butler's analysis of the objective medical findings are given great weight, his RFC form completed at the request of claimant's attorney is not given controlling weight and is not fully adopted because it considers the claimant's physical capacity based on a then-recent medical finding of a shoulder impairment and do not reflect that the claimant would have had such limitations of her alleged date of disability onset. He can't rule that out, and then he goes on and says, in addition, because it was completed to form for litigious purposes, Dr. Butler benevolently found the claimant to be more limited than what the objective medical findings, and so on. That's also contrary to our law, so why doesn't that right there, both of those, invalidate the findings of the ALJ? He's relied on two improper grounds, and if this shoulder problem, even if it was recent, is true and thrown into the mix, why wouldn't that change the whole complex of what would be available to her in the economy? Right. Well, the ALJ looked at, in addition to those two, and I would not rely on the latter reason for prepared for litigation purposes, but as to the shoulder impairment, the ALJ did. Right, and if it was error, we'd ask that it be briefed that it was harmless error. We'd ask the court to look at the other reasons, and I'll begin first with the shoulder impairment. That was treated conservatively. Under Johnson v. Shalala, conservative treatment can be a factor that the ALJ can consider. This relatively new impairment, January 2008, doesn't seem to have severe limitations established in the medical record of evidence, and that dovetails into a lack of credibility, which the ALJ discussed. Just a second, just so we can go off that. The shoulder problem was diagnosed in January 2008 as being conservatively treated and would not have been present on the claimant's alleged date of disability onset. So, you know, he talks about conservatively treated, and I know we have those cases, but on the facts of this case, he seems to be saying, look, this wasn't there when she first claimed it, so I'm not going to give it any weight. It's being conservatively treated. Now, you can put a spin, and I'm not saying that pejoratively, but you can put a gloss on it that he used the word conservatively. He's saying, look, it wasn't there. He said that twice, and that's why I have a problem with it. And I don't know how, you know, sitting in my seat, I have no idea how this plays out if he had credited the shoulder factor, how that would play out on the technical side. Well, he had an ME at the hearing, and it was happening, the shoulder impairment was diagnosed right before the hearing. So, we have what we have in the medical record. Luckily, the ALJ had a medical expert at the hearing. I have a sort of a theory question on which you may be able to advise me if we have clear law on this, but we may not. The ALJ has to give specific legitimate reasons for looking to what the medical experts say, rather than the treating doctor. Okay, so let's say the ALJ gives three reasons, and two of them are wrong under our law, but one of them is not wrong, let's say. He gives the reasons mentioned by Judge Fisher, and let's assume that he's mistaken to rely on those. But he also says that he doesn't find the witness credible, he thinks she's embellishing, and he thinks the treating physician's opinions are resting on that in part. So, if an ALJ gives three reasons, and two of them are wrong, but one of them is permissible, does that satisfy the obligation to give specific legitimate reasons to go to the medical experts, you know, under the substantial evidence test? And there's an analogy. In immigration law, we have very clear law that if an IJ makes a negative credibility decision based on multiple grounds, and only one of those grounds is valid, that we're supposed to affirm under the substantial evidence test, you know, like if one out of five grounds are valid to make that decision. But I wasn't aware of any law in the Social Security context that makes the same kind of rule. I think Batson versus Commissioner speaks to that resolving the ambiguities in the evidence, and if there's one good reason, it's enough to affirm the Commissioner. In this case, it's also a lot like Bray, the medical portion of Tomasetti, where the ALJ relied on the lack of credibility. We have a malingering diagnosis here. We have a reviewing physician who found, who noted that she was embellishing her symptoms. Even her own treating nurse, and nurses are not acceptable medical sources, but she did treat with a nurse, said that she wasn't giving her best effort, that there's some physical capacities were not so, the tests weren't that good, but it was probably based on her poor effort. And so we, let me get a citation for that. I had it here. So we have, so we have lack of credibility here, which is a very strong factor. This case hinges on credibility, and it's not challenged on appeal. Well, that may be, but, you know, and I take that point, but nonetheless, what the ALJ did, he didn't discredit all of her testimony, and he didn't, he gave Dr. Butler's, as I just read, diagnosis, great weight, but then rejected the shoulder injury as being recent. But I do note at 906, 907, that he did pose to the VE a hypothetical based on Dr. Butler with the restriction on VEACH, upper extremities limited to frequent, occasional, so on and so forth. And then he said, comes down to what appears to be directed at the shoulder problem. With those limitations, would the individual be able to perform past work? No, Your Honor. If not transferable, would there be any jobs in the national economy? Is occasional reach? No. So, it sounds like if he had credited Dr. Butler on the shoulder diagnosis, VE, in the hypothetical, I don't know what else went into that hypothetical that the ALJ gave, but the only thing that was restricting upper body was the shoulder diagnosis, the VE says, no, there are no jobs. So, why doesn't that say that if she's wrong, if the ALJ was wrong about discrediting the shoulder diagnosis because it was recent, why doesn't that require us to send it back and say, no, we still have to consider it? I'm sorry, could you repeat the last part of your question? Well, why wouldn't we send it back? I mean, it can't be harmless if, in fact, VE testified that if you do credit the shoulder restriction and you do put that into the mix based on Dr. Butler's diagnosis, then there are no jobs. I'm in the unenviable position of, the record is clear here. The ALJ gave a vocational expert in a hypothetical adopting Dr. Butler's restrictive RFC. Dr. Butler's RFC was more restrictive than what the ALJ found. The VE testified that Ms. Case could not do her pastoral work or Step 5. Thank you. I see that I'm over. No problem. You kept your time up with a lot of questions. Well, so the attorney for the commissioner indicates that the judge had a medical expert at the second hearing. That's the purpose of the medical expert is to clear up any conflicts in the record. And as I indicated previously, Your Honors, and this judge, this doctor did take into account the shoulder, everything that was going on. And what he says at the end of his testimony on 896 is that she's been seen by a very good specialist. I believe that the best that anyone could give her is that what is that Dr. Butler has given. I believe my opinion is that she's capable of that RFC of sedentary and has been all this time. So he was given the information and given the timeline from 03 up to the end of the hearing. And he said all this time, that's what, that's the best opinion is the one from Dr. Butler, her treating rheumatologist. And this circuit has said over and over again, treating physicians should be given the most weight. And if you're a specialist, you especially get more weight. So Dr. Butler's opinion should, despite any credibility rulings here, Your Honor, and no, it wasn't, it wasn't brought up at the, um, any other time because this is more about the, what her treating rheumatologist has said and the defendant, or the commissioner's attorney said, refers to one note on lack of effort after over, I would say over 700 pages of medical records. There's one note where my client didn't give good effort. Where's the rest of it? That's it. She's, um, she's pretty much been to every doctor. I've not, I've read through these records a million times. I can tell you there's not, there's nothing in there besides the one doctor that saw her for a psychological issue who said she was malingering. That's the only other issue. Dr. Rodkey himself in his testimony said there have been some issues with test, with credibility. And he addresses it himself, the medical expert, the commissioner's attorney referred to. And then again, he goes back to say, but Dr. Butler's in the best position to note her RFC. And when you put Dr. Butler's RFC to the, to the vocational expert, they're saying she can't work. So that's, that's where we leave it is that she can't work, Your Honors. And that's what we're contending at this time and have been for several years. Thank you. Thank you for your argument this morning. Case versus Estrue is submitted.
judges: McKeown, Fisher, Gould